UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

IN RE: PUBLIC OFFERING PLE
ANTITRUST LITIGATION

MBD No. <u>05 MC-10018</u>

Case pending in District Court for the
Southern District of New York
00 CV-7804 (LMM)

Oral Argument Requested Pursuant to
L.R. 7.1(D)

## MEMORANDUM OF LAW IN OPPOSITION TO STUART CABLE'S MOTION TO QUASH PLAINTIFFS' SUBPOENA

This proceeding involves a discovery dispute relating to an antitrust case pending in the federal court in New York in which the plaintiffs are represented by the firm of Kirby McInerney & Squire, LLP. The essence of the litigation is the plaintiffs claim that the defendants, in excess of twenty investment banks, have colluded to set underwriting fees in the market for initial public offerings ("IPOs"). An essential charge is that underwriting fees have been fixed at 7% and are non-negotiable. *See* Plaintiffs' Complaint, attached as Exhibit A. The district court for the Southern District of New York and the Second Circuit have both sustained the allegations. *See In re Public Offering Fee Antitrust Litigation*, 2002 WL 31819597 (2d Cir. 2002) and *In re Public Offering Fee Antitrust Litigation*, 2004 WL 350696 (S.D.N.Y. 2004). Discovery is in full swing.

The discovery request underlying this motion derives from a widely published article/promotional advertisement in the *IPO Journal* (the "Cable Article"), a copy of which

also can be found on the website of Goodwin Procter LLP.[1] In this article, Stuart Cable, a partner of Goodwin Proctor, LLP, states as a matter of fact that the underwriting fees IPO issuers pay to financial intermediaries are "fixed" at 7% and are "non-negotiable." *See* Cable Article, pages 11-12.

The unwillingness of firms to negotiate on price is bedrock evidence for the existence of a price-fixing conspiracy. *See National Collegiate Athletic Ass'n v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 99-100, 104 S.Ct. 2948, 2959 (1984) (minimum aggregate price a mechanism that "operates to preclude any price negotiation between [parties and constitutes] horizontal price fixing, perhaps the paradigm of an unreasonable restraint of trade").[2] Accordingly, in late February plaintiffs (respondents) served a subpoena on Mr. Cable requesting documents and a deposition, which is scheduled for March 17, 2005.[3] *See* Plaintiffs' Subpoena of Stuart Cable, attached as Exhibit B. The likelihood that Mr. Cable's voluntary and public remarks of fact may have at least

---

[1] *See IPO Journal*, "Top Ten To-Do's for CEOs of the Next New Thing," Vol. 4, No. 11, November 2001, pages 11-13 ; *see also* http://www.goodwinprocter.com/pubindex.asp?paID=8. The Cable Article was provided to movant as Exhibit D of Plaintiffs' Subpoena of Stuart Cable. The Subpoena of Stuart Cable is attached as Exhibit B.

[2] Parallel pricing, price-fixing and the lack of price negotiation are strong indicators of a conspiracy violation of Section 1 of the Sherman Act. For a broad discussion of the evidence that is relevant in an antitrust conspiracy case, plaintiffs refer the Court to *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d Cir. 2004) and *In re High Fructose Corn Syrup*, 295 F.3d 651 (7th Cir. 2002).

[3] Plaintiffs notified Mr. Cable that they would keep the deposition short and that the document production request could be curtailed so as not to be burdensome. *See* Letter from David Kovel to Stephen Townsend, attached to this brief as Exhibit C. Mr. Cable and his counsel did not respond to these attempts to reach an agreement.

discoverable relevance to an action that alleges "fixed" and "non-negotiable" 7% fees is beyond cavil. And, of course, no one obliged Mr. Cable to make a factual statement in a published journal. And, obvious too, the plaintiffs did not randomly pluck Mr. Cable from a well of lawyers who may toil in the underwriting arena.

### I.

Mr. Cable makes no legitimate effort to argue that his statement is not at least likely to lead to the discovery of admissible evidence. Tellingly, nowhere in the memorandum of law does he provide the court with the statement that has triggered this discovery request. Mr. Cable's assertion that his knowledge "is no more relevant than that possessed by thousands of other professionals in the field" is of no moment. (Movant's Memorandum of Law at 5). He, not thousands of other professionals, stated publicly, voluntarily and in a broadly published journal, that he has knowledge of a pivotal fact, one that would indicate a price-fixing conspiracy.

Mr. Cable also says that we seek an expert opinion. Nonsense. Plaintiffs seek the factual underpinnings for Mr. Cable's factual assertion that IPO underwriting fees are "fixed" and "non-negotiable."

### II.

Mr. Cable says plaintiffs seek privileged material. But plaintiffs have expressly stated otherwise. The subpoena expressly excludes privileged documents. *See* Plaintiffs' Subpoena of Stuart Cable (Exhibit B) at page 2. It argues too much to say that Mr. Cable

should not be subject to a deposition because he is a lawyer and might assert privilege. *See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 2002 WL 1822404, *2 (D.Kan. 2002) ("[a]n attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition"). The *possibility* that privilege may be invoked is no basis to conclude *a priori* that a deposition is inappropriate. And while being deposed, Mr. Cable retains full entitlement to claim privilege where appropriate.

### III.

Movant's references to the first amendment are frivolous. No political association will be curtailed. No confidential information or confidential journalistic sources or exertions will be exposed and whatever confidential or privileged information Mr. Cable may have is more than adequately protected by the attorney-client privilege. Although Mr. Cable would like to have himself treated differently because he is a lawyer, this third-party deposition is no different from any other case where a third party has witnessed an event that is at the center of the controversy. There is no first amendment protection that would allow all professionals to escape depositions. *See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, 2002 WL 1822404 at *2.

None of Mr. Cable's other authorities is relevant.[4] Mr. Cable cites to *United States v. McGoldrick*, 796 F.Supp. 178 (E.D. Pa 1992), for the proposition that his first amendment rights would be infringed by a deposition that explores the factual basis of his statement that IPO underwriting fees are fixed and non-negotiable. *McGoldrick* involved a criminal defendant who wanted to examine a journalist about sources for a story that did not address the predicate facts of the defendant's case -- a "fishing expedition" was how the court put it. 795 F.Supp. 179. Here, there is no fishing expedition. Mr. Cable volunteered direct factual knowledge bearing on the instant case; here, Mr. Cable is the fact witness, himself, not merely the repository of data that a reporter may have gathered.[5] Were plaintiffs searching for sources, however, Mr. Cable has already revealed them in the form of deal lists in the article. *See* Cable Article at 11. He and his firm even maintained this information on the firm website. Advertising his experiences, he reveals that either the content of his factual assertion is false or that he has evidence of facts undergirding possible antitrust violations in the market for IPO underwriting fees. Advertisement of direct factual knowledge is no basis for first amendment protection. The contention is frivolous.

---

[4] *Deitchman v. Squibb*, 740 F.2d 556, 558 (7th Cir. 1984), involved the disclosure of confidential medical data relating to genital cancer. After general comments about privacy, the Seventh Circuit allowed discovery to go forward albeit in a manner designed to limit the intrusion into confidential medical histories. Besides, the case involved neither deposition, nor privilege, nor anything that bears on Mr. Cable's application. In *Wyoming v. U.S. Dept. of Agriculture*, 208 F.R.D. 449, 454-455 (D.D.C. 2002), the plaintiff sought confidential documents of political organizations. No routine business activities were involved.

[5] The first amendment would not necessarily protect Mr. Cable even if he were a journalist with confidential sources. See *In re Special Proceedings*, 373 F.3d. 37 (1st Cir. 2004).

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(D) the plaintiffs request oral argument. Plaintiffs' New York counsel can be available for argument before the Court in person if given advance notice of one-half day. Plaintiffs' counsel can be available for a hearing by telephone if given advance notice of two hours.

## CONCLUSION

For the foregoing reasons, the application must be denied.

Respectfully submitted,

_____
Andrew C. Griesinger (BBO # 211285)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110-2214
(617) 542-9900

Of Counsel:

**KIRBY McINERNEY & SQUIRE, LLP**
Roger Kirby, Esq.
David Kovel, Esq.
830 Third Avenue
New York, NY 10022
(212) 371-6600

Attorneys for Plaintiffs

Dated: March 16, 2005

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by ~~mail~~/hand/~~facsimile~~ on 3/16/05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLERK'S NOTICE

This document can not be scanned due to its size, or the way in which it was bound.

The original is available for viewing in the Clerk's Office.