UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: PUBLIC OFFERING PLE ANTITRUST LITIGATION | MBD No. 05 MC-10018<br><br>Case pending in District Court for the Southern District of New York<br>00 CV-7804 (LMM)<br><br>Oral Argument Requested Pursuant to L.R. 7.1(D) |

**PLAINTIFFS' OBJECTION PURSUANT TO FED.R.CIV.P. 72(a) AND RULE 2(b) OF THE RULES FOR UNITED STATES MAGISTRATES IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTES TO MAGISTRATE JUDGE'S ORDER ON STUART CABLE'S MOTION TO QUASH PLAINTIFFS' SUBPOENA**

Plaintiffs are two formerly publicly traded companies that issued their stock in initial public offerings ("IPOs"). They object to and move for reconsideration of the Magistrate Judge's order (attached as Exhibit A to the affidavit of David Kovel, Esq. (the "Kovel affidavit")) allowing a motion to quash the subpoena of one Stuart Cable. That said, plaintiffs ask the Court to stay its hand until the end of April in the hope that the parties might resolve the matter consensually. In the event that such attempts fail, below are the arguments for the objection.

I

This proceeding involves a discovery dispute relating to an antitrust case pending in the federal court in New York. The essence of the underlying litigation is that defendants, in excess of twenty investment banks, have colluded to set underwriting fees in the market for initial public offerings ("IPOs"). An essential charge is that

underwriting fees for transactions in the $20-80 million range have been fixed at 7% and are non-negotiable. *See* complaint, attached as Exhibit B to the Kovel affidavit. From 1995 to 1997, 95% of the IPOs between $20 million and $80 million carried underwriting fees of 7%. Complaint, ¶16, Kovel Aff., Exh. B.[1] The district court for the Southern District of New York and the Second Circuit have both sustained the allegations. *See In re Public Offering Fee Antitrust Litigation*, 2002 WL 31819597 (2d Cir. 2002) and *In re Public Offering Fee Antitrust Litigation*, 2004 WL 350696 (S.D.N.Y. 2004). (The allegations also find obvious support in an NASD censure of one of the defendants herein.) Discovery is in full swing; class certification papers will have been fully submitted by about June 1.

The discovery request underlying this objection derives from a widely published article/promotional advertisement in the *IPO Journal* (the "Cable article"), which also appears on the website of Goodwin Procter LLP.[2] In this article, Stuart Cable, a partner of Goodwin Procter, LLP, states as a matter of fact that the underwriting fees IPO issuers pay to financial intermediaries are "fixed" at 7% and are "non-negotiable." *See* Cable article, pages 11-12. The Cable article also lists IPOs in which Mr. Cable has represented issuers and underwriters. A fully developed record will show, in addition to

---

[1]   The class period is 1994 to the present.

[2]   *See IPO Journal*, "Top Ten To-Do's for CEOs of the Next New Thing," Vol. 4, No. 11, November 2001, pages 11-13 ; *see also* http://www.goodwinprocter.com/pubindex.asp?paID=8.  The Cable article is Exhibit D of the subpoena.  The subpoena is attached to the Kovel affidavit as Exhibit C.

2

the statistical certainty that some of the transactions identified by Mr. Cable fall within the price-fixed profile, that nearly all of the transactions identified by Mr. Cable actually do fall within the price-fixed profile of the complaint. *See* the March 17, 2005 letter from Roger W. Kirby to Henry C. Dinger, Kovel aff., Exh. D-1.

In late February plaintiffs served a subpoena on Mr. Cable requesting documents and a deposition, noticed for March 17, 2005. *See* plaintiffs' subpoena of Stuart Cable, attached as Exhibit C to the Kovel affidavit.[3] On March 14, 2005, Mr. Cable filed an emergency motion to quash the subpoena on the grounds that: (i) the subpoena sought expert testimony, (ii) Mr. Cable had not worked with either of the plaintiffs in the underlying case (as opposed to other members of the uncertified class); (iii) the subpoena was burdensome, (iv) the subpoena sought privileged material, and (v) the subpoena violated the first amendment of the United States Constitution.

Mr. Cable made no reasoned attempt to argue that his deposition was not calculated to lead to the discovery of admissible evidence. The crux of what he did assert was that he had had no direct involvement with the named plaintiffs in this putative class action. This argument is irrelevant. Plaintiffs asserted that defendants have conspired to fix the underwriting fees of *all* IPOs between the range of approximately $20 million and

---

[3] *See also* March 11, 2005 letter from David Kovel to Stephen Townsend, attached to this brief as Exhibit D to the Kovel affidavit. Mr. Cable and his counsel did not respond to attempts to reach an agreement.

$80 million at 7%, *see* complaint at ¶¶49-50, Kovel aff., Exh. B, and a fact witness is as relevant for an individual suitor as for a class representative.

After a telephonic hearing on March 17, 2005, the Magistrate Judge provisionally granted Mr. Cable's motion solely on the grounds that: (1) plaintiffs did not provide evidence that Mr. Cable was involved with or had information about transactions in the underlying case, and (2) plaintiffs were seeking testimony of an unretained expert since plaintiffs were not seeking information on specific events or occurrences. See order at page 1, Kovel aff., Exh.A.[4]  The order was without prejudice to the entitlement to re-issue the subpoena upon additional record grounds.  Plaintiffs have ordered the transcript from the hearing but have not yet received it.

## II

The order is clearly erroneous.  (1) The Magistrate Judge shifted the burden onto the plaintiffs to show that that Mr. Cable had relevant testimony; (2) regardless, plaintiffs were not bound to show that Mr. Cable had relevant testimony, but that his deposition was "reasonably calculated to lead to the discovery of admissible evidence" (Fed. R. Civ. P. 26(b)(1)); (3) were the burden on the plaintiff and the standard as held by the Magistrate Judge, plaintiffs satisfied it, as the movant had publicly declared his

---

[4] Plaintiffs were somewhat handicapped at the hearing in that movant had failed to supply all the papers that had been filed.  That is, although the affidavit of service declared that the papers had been posted on March 14, 2005, movant's postage meter showed a postmark of March 15, 2005.  As a result, plaintiffs did not receive movant's affidavit until after the hearing.  Kovel aff., ¶ 3.

4

knowledge of facts essential to the claims, and it was these facts, not the witness's expertise, that plaintiffs pursue.

Mr. Cable's factual assertion that IPOs are indeed "fixed" and "non-negotiable" at 7% necessarily and without more satisfies the requirement that discovery of the basis for these remarks is reasonably calculated to lead to the discovery of admissible evidence.[5] The Cable article (Kovel aff., Exh. D to its Exh. C) shows that Mr. Cable represented at least 8 issuers. *See* Cable article at 12. He also represented underwriters including two or more who are alleged to have conspired in the price-fixing scheme. The IPOs of six of the issuers that Mr. Cable represented fit squarely within the range of IPOs relevant to the price-fixing conspiracy alleged in this case. Kovel aff., Exh. D-1. The remaining two IPOs were greater than $80 million, outside the limit of the transactions that are part of the scheme.

The unwillingness of firms to negotiate on price is bedrock evidence for the existence of a price-fixing conspiracy. *See National Collegiate Athletic Ass'n v. Board of Regents of University of Oklahoma*, 468 U.S. 85, 99-100, 104 S.Ct. 2948, 2959 (1984)

---

[5] Magistrate Judge Dein stated in her order that plaintiffs only stated that it is "statistically likely" that Mr. Cable has been involved in IPOs relevant to this case. Order on Motion to Quash at 1. The statistics are that in excess of 95% of IPOs of a certain size bear this fixed, non-negotiable fee. And in fact 100% of the IPOs identified by Mr. Cable in the article that are the size addressed by the complaint were at 7%. Kovel aff., ¶3. In any event, discovery reasonably calculated to lead to the discovery of admissible evidence is the standard that plaintiffs had to meet. According to the Magistrate Judge's order, then, plaintiffs have met that standard.

(minimum aggregate price a mechanism that "operates to preclude any price negotiation between [parties and constitutes] horizontal price fixing, perhaps the paradigm of an unreasonable restraint of trade").[6]

## III

### A.   Standards and Burdens

The Magistrate Judge's order asserts that plaintiffs have the burden of showing that Mr. Cable actually has relevant evidence. See order at 1, Kovel aff., Exh. A. Obliging the party who is seeking discovery to show that moving has relevant evidence is not the correct standard. Besides the party seeking discovery does not bear the burden of proving the discoverable relevance of testimony. The correct standard is whether "the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

The Cable article alone shows that a deposition of Mr. Cable is reasonably calculated to lead to the discovery of admissible evidence. Plaintiffs are not required to show *ex ante* that Mr. Cable has relevant evidence. But if they were, the mere authentication of the Cable article and adoption of the statement alone would justify the deposition, under either the correct standard or the one applied by the Magistrate Judge.

---

[6]   Parallel pricing, price-fixing and the lack of price negotiation are strong indicators of a conspiracy violation of Section 1 of the Sherman Act. For a broad discussion of the evidence that is relevant in an antitrust conspiracy case, plaintiffs refer the Court to *In re Flat Glass Antitrust Litigation*, 385 F.3d 350 (3d Cir. 2004) and *In re High Fructose Corn Syrup*, 295 F.3d 651 (7th Cir. 2002).

Mr. Cable argued that he has not been involved with any of the named plaintiffs in the underlying case. This is a red herring. The testimony sought would be discoverable even if plaintiffs were bringing an individual action, since the allegations are of a broad-ranging conspiracy. There can be no question that Mr. Cable's factual assertions constitute an adequate basis for discovery whether the claims were brought by one issuer or a class of them. Any evidence against any of those defendants that serves to prove a conspiracy will directly impact the case of the named plaintiffs. And, while not central to the argument, it is worth noting that Mr. Cable does not appear to advance the class contention in good faith. We surmise this because, when later asked to agree to sit for a deposition following class certification, movant declined. Kovel aff., Exhibits E and E-1.[7] Finally, the Cable testimony also would be reasonably calculated to lead to the discovery of commonality issues in respect of class certification.

**B.    Expertise**

Mr. Cable, not thousands of other professionals, has stated publicly, voluntarily and in a broadly published journal, that he has knowledge of those pivotal facts, one that would indicate a price-fixing conspiracy. Plaintiffs seek the factual underpinnings for Mr. Cable's factual assertion that IPO underwriting fees are "fixed" and "non-negotiable." The underlying facts of these assertions are both relevant and discoverable. *See Covey Oil Company v. Continental Oil Company*, 340 F.2d 993 (10th

---

[7]    This correspondence is not offered on the merits of the controversy but to demonstrate that insofar as movant contends that class certification is a condition to this

Cir. 1965), *cert. denied*, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965) (holding that in an antitrust case general relevancy was sufficient to require a nonparty witness to divulge trade secrets that related to price, cost and volume of sales of gasoline); *GTE Products Corporation v. GEE*, 112 F.R.D. 169 (D.Mass. 1986); *United States v. International Business Machines Corporation*, 66 F.R.D. 186 (S.D.N.Y. 1974) (holding that the size and significance of the antitrust case supported the principle that the inconvenience to third parties was outweighed by public interest in seeking the truth).

With all due respect to Mr. Cable's bona fides, plaintiffs are not seeking his opinion as an expert. Experts there are aplenty. Fact witnesses of antitrust violations are not. *See Callahan v. A.E.V., Inc. et al.*, 947 F.Supp 175, 179 (W.D. Pa 1996) ("[d]iscovery in an antitrust case is necessarily broad because allegations involve improper business conduct. Such conduct is generally covert and must be gleaned from records, conduct, and business relationships") (citations omitted).

The Magistrate Judge committed clear error.

## CONCLUSION

For the foregoing reasons, this Court should sustain plaintiffs' objection to the Magistrate Judge's order.

---

examination of Mr. Cable, the argument lacks a good faith basis.

Respectfully submitted,

_____
Andrew C. Griesinger (BBO # 211285)
Griesinger, Tighe & Maffei, LLP
176 Federal Street
Boston, MA 02110-2214
(617) 542-9900

Of Counsel:

**KIRBY McINERNEY & SQUIRE, LLP**
Roger W. Kirby, Esq.
David Kovel, Esq.
830 Third Avenue
New York, NY 10022
(212) 371-6600

Attorneys for Plaintiffs

Dated: March 28, 2005