UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| IN RE: PUBLIC OFFERING PLE ANTITRUST LITIGATION | MBD No. 05-10018<br><br>Case pending in District Court for the Southern District of New York 00-CV-7804 (LMM)<br><br>Oral Argument Requested<br>Pursuant to L.R. 7.1(D) |

# OPPOSITION TO PLAINTIFFS' OBJECTION TO ORDER GRANTING STUART CABLE'S MOTION TO QUASH SUBPOENA

Stuart Cable submits this response to a challenge of a March 17, 2005 order by Magistrate Judge Dein quashing a deposition subpoena directed at Mr. Cable on the ground that the subpoena sought to compel expert testimony in violation of Fed. R. Civ. P. 45(c)(3)(B)(ii). The challenged order was correct and should be upheld.

**Introduction and Background**

Mr. Cable is a partner in the Boston office of Goodwin Procter LLP.[1] He has been a corporate and securities lawyer for approximately 25 years.

The persons seeking Mr. Cable's testimony are two corporations who are plaintiffs in an antitrust action pending in the Southern District of New York against more than two dozen underwriting firms. Plaintiffs allege that the underwriters conspired to fix fees for underwriting services in connection with initial public offerings (IPOs). Although they purport to bring their claim as a class action on behalf of a class of issuers in mid-sized IPOs, we understand that the district court in New York has not acted on plaintiffs' motion for class certification.

---

[1] Technically, the professional corporation of which Mr. Cable is principal is the partner, but for convenience we will refer to Mr. Cable as the partner.

Mr. Cable has never represented either plaintiff on any matter. He has no information concerning the circumstances of the initial public offerings in which each plaintiff claims to have been victimized by the alleged price-fixing conspiracy.

Plaintiffs do not contend to the contrary. Rather, they seek to depose Mr. Cable because he is a securities lawyer who, as a result of long and extensive experience, has become familiar with customary practices in the securities industry. They hope that he will furnish usable evidence that underwriters in mid-sized IPOs invariably charge a 7% fee and are never willing to negotiate that percentage. Plaintiffs have singled Mr. Cable out of the thousands of experienced securities lawyers in the country because of two public statements he has made.

Neither statement had anything to do with the plaintiffs. The first was in a 2001 article written by Mr. Cable, "Top Ten To-Do's for CEOs of the Next New Thing," published in *IPO Journal*, a trade publication. In the article, he gives practical advice for executives of companies contemplating an IPO that reflects the lessons learned in the wake of the downturn in the internet industry. In the article, he expresses the view — without explanation or reference to particular transactions — that the "deal between you and the bankers is non-negotiable (7% of the gross)." The second publication was a 2004 article in the *Boston Globe* on the proposal of Google to conduct its IPO by means of an auction. In the article, no statement concerning underwriting fees is attributed to Mr. Cable. The *Globe* reporter quotes Mr. Cable as saying, with reference to the Google IPO, "[i]f this offering goes off without major snafus, you may be looking at a new model," and "[t]his is an attempt to take a less arbitrary, more market-oriented approach."

Plaintiffs obviously hope that Mr. Cable will give them evidence that they can offer in their attempt to prove that the underwriter defendants conspired to fix the prices for underwriting services in mid-sized IPOs. They served a subpoena that (i) directed Mr. Cable to testify at a deposition, and (ii) directed him to produce all documents "concerning (a) the pricing of

2

underwriting fees of any securities; (b) price uniformity or price coordination in the market for underwriting fees in initial public stock offerings; and (c) possible collusion or price-fixing in the market for underwriting fees in initial public stock offerings."

Mr. Cable objected to the document demand and moved to quash the deposition subpoena. The motion was referred to Magistrate Judge Dein who allowed the motion to quash on March 17, 2005. Magistrate Judge Dein concluded that since Mr. Cable had never been involved in the plaintiffs' IPOs, plaintiffs must be seeking to take free advantage of Mr. Cable's "diligence, research and expertise," quoting *Statutory Committee of Unsecured Creditors v. Motorola, Inc.,* 218 F.R.D. 325, 326 (D.D.C. 2003). Plaintiffs have lodged objections to the Magistrate Judge's order with this Court.

**Standard of Review**

Under Fed. R. Civ. P. 72(a), Magistrate Dein's order must be upheld unless "found to be clearly erroneous or contrary to law." This is a deferential standard. 12 C. Wright, et al., *Federal Practice & Procedure*, § 3069, at 350-351 ("In sum, it is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge.").

**Argument**

**1.    Plaintiffs seek the kind of information from Mr. Cable that Fed. R. Civ. P. 45(c)(3)(B)(ii) protects.**

Since plaintiffs do not dispute that Mr. Cable had no involvement — and therefore no specific information germane to — plaintiffs' own IPOs, they contend that they are entitled to examine Mr. Cable concerning the experience he has had, and the conclusions that he has formed (reflected, they infer, in the articles that they identify), as a result of representing other

3

companies in their IPOs.  Plaintiffs inisist that theirs will be an examination into "facts" not "opinions," and therefore not barred by Fed. R. Civ. P. 45(c)(3)(B)(ii).[2]

Plaintiffs misapprehend the distinction drawn by Rule 45(c)(3)(B)(ii).  The rule applies to protect a prospective witness whose testimony derives from his or her expertise, unless the party seeking discovery seeks "information … describing specific events or occurrences in dispute," and the expert's information does not derive from study undertaken at the request of a party to the litigation.  *See Statutory Committee,* 218 F.R.D. at 326.  Unless and until a class is certified *and* the class is defined to include former IPO clients of Mr. Cable *and* such clients choose not to opt-out of the class, there is no plausible argument that Mr. Cable has "information … describing specific events or occurrences in dispute."  All he has are the general impressions formed and conclusions reached as a result of extensive experience in representing clients in IPOs.  Generalizations from such experience constitute precisely the kind of testimony that lawyers obtain by hiring an expert witness with Mr. Cable's credentials.  Experts are frequently retained to testify concerning the customs and practices of a particular industry.  Plaintiffs may not obtain such testimony on the cheap by resort to compulsory process.

The cases on which plaintiffs rely in their objection do not support a contrary conclusion.  None of them address Rule 45(c)(3)(B)(ii).  All but one of them were decided before that Rule was even adopted.  They all stand for the unexceptionable proposition that the Federal Rules permit third-party discovery, despite some inconvenience to the third-party, where the third-party has evidence that is relevant to the litigation in which the discovery is sought.  None of the cases address the efforts of a litigant to obtain by compulsory process the intellectual capital of a third-

---

[2]    Although plaintiffs focus on the wrong distinction, it is worth pointing out that the editors of *IPO Journal* characterized Mr. Cable's article, along with three other articles, under the heading "IPO Counsel Opinions."

party that constitutes the basis of the third-party's livelihood. The district court's decision in *Statutory Committee* is plainly the more pertinent authority.

**2.      Compliance with plaintiffs' subpoena would impose "undue burden" on Mr. Cable.**

Rule 45(c)(3)(A)(iv) directs the Court to quash a subpoena that "subjects a person to undue burden." The subpoena that Magistrate Judge Dein quashed would have subjected Mr. Cable to undue burden and that fact constitutes an independent basis for overruling plaintiffs' objection to her order.

Consider what Mr. Cable would have to do in order to comply with the subpoena. Plaintiffs seek the production of all documents that concern "the pricing of underwriting fees of any securities." That might well require Mr. Cable to review the file of every IPO on which he has ever worked over the past quarter century for documents addressing underwriting fees.[3] Many of these files have been closed and are stored off-site. Once reviewed, he would have to consider whether such documents are protected by the attorney-client privilege, as many may well be. Plaintiffs would undoubtedly insist upon a log of such privileged documents.

Moreover, the testimony that plaintiffs seek would be difficult to give for many of the same reasons. It is one thing for an experienced lawyer to share the general impressions formed as a result of his or her experience. Such general impressions on Mr. Cable's part will not help plaintiffs, however, unless they can ground them in specific incidents.[4] But even if it is assumed that Mr. Cable recalls the specific incidents that have informed his judgment, he will again be faced with the difficult task of sorting through whether or not he would be violating his

---

[3]   While Mr. Cable can take the position that the files are not in his possession, custody or control, but rather in that of his law firm, plaintiffs would then serve Goodwin Procter LLP with a record-keeper subpoena. We may as well resolve the burdensomeness issue now.

[4]   As Mr. Cable has indicated in a second affidavit submitted in support of his Rule 45 objection to second subpoena served by plaintiffs in this matter, he did not refer or rely on any particular documents in making the statements on which plaintiffs rely. He relied, rather, on his experience and expertise.

5

obligation to protect privileged and confidential material concerning such information. It is unreasonable to compel Mr. Cable and his colleagues to go through that process.

It is particularly unreasonable to compel them to do so at this juncture when class certification in plaintiffs' action remains unresolved. If a class is certified, and one of Mr. Cable's IPO clients is a member of the class and elects not to opt out, then plaintiffs can request that such a company agree to waive any privilege to permit Mr. Cable or any other lawyer to disclose freely information pertaining to the transaction. But until these issues are resolved, the burdens of complying with plaintiffs' subpoena are significant and potentially a complete waste of time.

**Conclusion**

It is unfortunate that plaintiffs' counsel should feel compelled to buttress his argument by resorting to unfounded charges of bad faith. Mr. Cable has no stake one way or the other in plaintiffs' lawsuit. His interests are solely those of protecting his intellectual capital and avoiding what could be a tremendously burdensome exercise to achieve very little. We believe the propriety of plaintiffs' subpoena and Magistrate Dein's Order are questions of law that can be resolved on the basis of legal principles. For all the reasons set forth above, the Objection should be overruled and Magistrate Judge Dein's Order upheld.

Dated: April 13, 2005                     Respectfully submitted,

/s/ Henry C. Dinger, P.C.
Henry C. Dinger (BBO #125340)
Stephen H. Townsend (BBO #637714)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617-570-1897
Attorneys for Stuart Cable

6